UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | CASE NO. 1:16-cr-00116-TWP-MJD |
| vs. | ) | |
| SEAN DONNELLY, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE

The Defendant, Sean Donnelly, by counsel, Mario Garcia, hereby submits his Reply to the Government's Response in Opposition to Motion for Compassionate Release.

**1. The Defendant's waiver is not enforceable.**

The Government has argued that Mr. Donnelly's present motion should be denied because he entered a plea agreement in which he agreed not to seek to "modify" his sentence "in any proceeding, including ... under 18 U.S.C. § 3582."[1] The Government bases its argument on the well-settled rules in this Circuit, which state that unless proven to have been agreed upon involuntarily, the plea agreement "is valid, and must be enforced." *Id*. citing *United States v. Hare*, 269 F.3d 859, 860 (7th Cir. 2001). Further, that "a waiver stands or falls with the plea bargain of which it is part." *Id*. citing *Nunez v. United States*, 546 F.3d 450, 455 (7th Cir. 2008). While Mr. Donnelly did enter his plea agreement knowingly and voluntarily, this Court should still not enforce it and subsequently reject the Government's argument because Mr. Donnelly did not

---

[1] Dkt. #73, p. 9.

1

knowingly waive this particular right to seek a reduction in sentence under 18 U.S.C. § 3582 as it is presently constructed.

In *United States v. Burrill*, 2020 WL 1846788, the Court for the Northern District of California found that Burrill, who pled in December 2017, almost a year prior to the First Step Act being passed, did not waive his right to seek a reduction in sentence, even though his plea agreement contained a waiver similar to Mr. Donnelly's. The First Step Act, passed in December 2018, allowed sentence reductions under Section 3582 upon a defendant's motion for the *first time*. *Id*. at 2 (emphasis added). Up to that point, Section 3582 sentence reductions were only allowed upon a motion by the BOP. *Id*. Therefore, the Court found that Burrill "could not have knowingly waived his rights that were not in existence, or even contemplated, at the time of his plea." *Id*. Waiver is the relinquishment of a *known* right, and therefore Burrill did not waive his right to bring a sentence reduction motion in his plea agreement. *Id*. (emphasis added).

The same circumstances exist in Mr. Donnelly's case. Thus, this Court should also find that he did not waive his right to bring the present motion for a reduction in sentence under Section 3582. Mr. Donnelly pled guilty in February 2017, ten months earlier than Burrill.[2] This was almost two years before the First Step Act was passed. Therefore, Sean could not have knowingly waived a right that was not in existence, or even contemplated, at the time of his plea, since Sean wasn't allowed to seek a Section 3582 reduction on his own as of February 24, 2017. That right only became a reality to him in December 2018. He could not have possibly waived a right that wasn't his at the time.

---

[2] Dkt. #39.

Further, this Circuit's Court of Appeals noted in *United States v. Desotell*, 929 F.3d 821, 826 (7th Cir. 2019), that waivers are interpreted according to principles of contract law. Therefore, under the principles of contract law, the occurrence of the COVID-19 pandemic, an unforeseen event, and all the dangers it presents to Mr. Donnelly's well-being, certainly make his 235-month sentence vitally different from what he expected at the time of the plea agreement. So much so, that making Mr. Donnelly serve the entirety of his 235-month sentence is now impracticable. The pandemic currently ravaging our entire planet has changed Sean's 235-month sentence from a tough, lengthy, but fair sentence, to the possible equivalent of a death penalty. Sean pled to two counts, Coercion and Enticement and Possession of Material Involving the Sexual Exploitation of Children, in violation of 18 U.S.C. § 2422(b) and 18 U.S.C. § 2252(a)(4)(B), respectively.[3] Section 2422(b) carries a term of imprisonment of not less than ten years to life. 18 U.S.C. § 2422(b). Section 2252(a)(4)(B) requires a sentence of not less than 10 years or no more than 20. 18 U.S.C. 2252(a)(4)(B). Under both sections, the death penalty is not an available punishment method. Further, while Mr. Donnelly's 235-month sentence was less than the guideline-recommended range of 360 months to life, that did not include the possibility of a death penalty either. This Court did not sentence Mr. Donnelly to death because that would have been grossly disproportionate to the offenses committed by Sean.

Should Sean perish as a result of contracting COVID-19, justice would not be served. On the contrary, Sean's death would deprive this community of the opportunity to make sure that Sean was properly held accountable for his actions. The spread of the COVID-19 virus has created circumstances that were unfathomable and unforeseeable just three years ago, when Sean pled guilty. This Court now has the opportunity and authority to both mitigate this significant danger

---

[3] Dkt. #56.

by reducing Sean's sentence to time-served and ordering any additional conditions of supervised release that it believes are sufficient but not greater than necessary to ensure Sean is safe, but also that he continues to be monitored by the United States Probation Office and is not a threat to the community.[4]

### 2. Sean's asthma should be an extraordinary and compelling reason for release.

The Government primarily opposes Mr. Donnelly's Motion on account of his asthma because it appears to be controlled within the Bureau of Prisons ("BOP") and because it is only "mild" asthma and thus is not recognized by the CDC as a high-risk factor if he were to contract the virus.[5] However, numerous district courts have respectfully disagreed.[6] Whether Mr. Donnelly's asthma is categorized as mild or moderate, it is clear that COVID-19 infects the lungs and that individuals who already have respiratory issues will have much greater difficulty recovering from the disease, and may not ever fully recover from its damage to the lungs, even if

---

[4] *See U.S.A. v. Damon Powell*, 1:16-cr-00152-JMS-MJD, (May 12, 2020) (Doc. #57)(Magnus-Stinson, J.) (Where Court over the Government's objection ordered a reduction of sentence to time-served but added home confinement and a third year of supervision to the terms of the defendant's supervised release).

[5] Dkt. # 73 at 11.

[6] *See, e.g.*, *United States v. Gorai*, 2020 WL 1975372, at *3 (D.Nev., Apr. 24, 2020) (granting motion for reduction after finding "defendant's asthma falls squarely within the ambit of preexisting conditions that the CDC has unambiguously explained place him at greater risk of COVID-19"); *United States v. Norris*, No. 3:18-cr-243, No. 37 (D. Conn., Apr. 16, 2020) (granting reduction where only risk factor identified was asthma: "[Defendant] suffers from asthma and uses an Albuterol inhaler to treat his symptoms. . . . [H]is medical condition and current conditions of confinement constitute extraordinary and compelling reasons to reduce his sentence."); *United States v. Wen*, 2020 WL 1845104 (W.D.N.Y., Apr. 13, 2020) (granting reduction for 48-year old defendant where only risk factor was history of asthma; noting *possible* positive case at institution); *United States v. Tran*, 2020 WL 1820520 (C.D. Cal., Apr. 10, 2020) (granting reduction for defendant serving a 15 year sentence for Hobbs Act robbery and possession of a machine gun where defendant suffered from asthma since childhood and was housed in a facility with an active COVID-19 outbreak); *United States v. Hernandez*, ___ F.Supp.3d ____, 2020 WL 1684062, at *3 (S.D.N.Y., Apr. 2, 2020) (granting reduction based on CDC guidance that persons with asthma are at high risk of serious illness if they contract the disease); *United States v. Gentille*, 2020 WL 1814158 (S.D.N.Y., Apr. 9, 2020) (same); *United States v. Lee*, ___ F.Supp.3d. ___, 2020 WL 2512415 2 (N.D.Cal., 2020) (granting reduction; noting the government did not dispute that moderate to severe asthma is a recognized risk factor); *United States v. Echevarria*, 2020 WL 2113604 (D.Conn., May 4, 2020) (granting reduction for 49-year old with history of asthma, though court noted other unidentified "chronic medical problems"). Sometimes courts cite asthma and other respiratory issues (like chronic bronchitis). *See, e.g., United States v. McCarthy*, 2020 WL 1698732, at *1 (D.Conn., 2020) (granting reduction for armed bank robber with COPD, asthma and other lung related ailments); *United States v. Gileno*, 2020 WL 1916773, at *5 (D.Conn., Apr 20, 2020) (granting where defendant suffers from "chronic asthma and other respiratory issues that put him at increased risk").

they survive. Further, asthma is a known and established risk factor for COVID-19. Asthma is a lung condition in which the lungs narrow and swell, making it difficult to breathe. The difficulty breathing results from a diminished oxygen supply because of the extra mucus that occurs with increased swelling.[7] Since the pandemic began, it has been widely known that COVID-19 damages the lungs by "inflaming and clogging the tiny air sacs in the lungs, choking off the body's oxygen supply until it shuts down the organs essential for life."[8] Although "the data analysis on the effects of asthma is in its infancy, an existing body of research shows the flu and milder coronaviruses exacerbate asthma."[9] In fact, "viral infections are the No. 1 cause of asthma flares in both children and adults under normal conditions." *Id*. Therefore, adding COVID-19 complications to his already diminished breathing capacity could prove disastrous, if not deadly, for Sean.

Moreover, post-infection complications in serious COVID-19 cases include acute respiratory distress syndrome ("ARDS"), a potentially life-threatening lung injury,[10] as well as lung scarring that can cause permanent damage.[11] Thus, even if Mr. Donnelly survived COVID-19, his risk of long-term complications is higher because of his chronic asthma, as it puts him at higher risk of having a serious case and being put on a ventilator, which in turn increases the risk of a lung injury, scarring, and lasting, debilitating effects.[12]

---

[7] *Patient Care & Health Information: Diseases & Conditions: Asthma*, Mayo Clinic (May 20, 2020) *available at* https://www.mayoclinic.org/diseases-conditions/asthma/symptoms-causes/syc-20369653.

[8] Lenny Bernstein et al., *Coronavirus destroys lungs. But doctors are finding its damage in kidneys, hearts and elsewhere,* Washington Post (Apr. 15, 2020), available at https://www.washingtonpost.com/health/coronavirus-destroys-lungs-but-doctors-are-finding-its-damage-in-kidneys-hearts-and-elsewhere/2020/04/14/7ff71ee0-7db1-11ea-a3ee-13e1ae0a3571_story.html.

[9] Danny Hakim, *Asthma Is Absent Among Top Covid-19 Risk Factors, Early Data Shows,* The New York Times (Apr. 16, 2020), available at https://www.nytimes.com/2020/04/16/health/coronavirus-asthma-risk.html.

[10] *Here's the Damage Coronavirus (COVID-19) Can Do to Your Lungs*, The Cleveland Clinic (Mar. 20, 2020) https://health.clevelandclinic.org/heres-the-damage-coronavirus-covid-19-can-do-to-your-lungs/.

[11] Lois Parshley, *The Emerging Long-Term Complications of Covid-19, Explained*, Vox (May 8, 2020) https://www.vox.com/2020/5/8/21251899/coronavirus-long-term-effects-symptoms.

[12] *See* Lisa Du, *Virus Survivors Could Suffer Severe Health Effects For Years*, Bloomberg News (May 12, 2020). Available online at: https://www.bloomberg.com/news/articles/2020-05-12/covid-19-s-healtheffectscan-last-long-

Because of these reasons, this Court should find that Mr. Donnelly's asthma, in light of the COVID-19 pandemic, is an "extraordinary and compelling" reason that gives rise to relief under 18 U.S.C. § 3582.

### 3. 3553(a) factors support release.

The Government's response concerning Sean's sentence reduction request focuses mainly on the perceived danger he presented at the time of his arrest and the danger that similarly situated offenders have of recidivating after incarceration.[13] The Government's response fails to note any behavior or disciplinary issues that Sean has had while serving his sentence. Mr. Donnelly has remained in detention since he was arrested in July 2015. Throughout this time, Sean has had the opportunity to consider the effects of his criminal activity, he's maintained contact with his family, and had and still has tremendous support from his parents, who are willing to provide as much financial and emotional support as necessary to ensure that Sean is safe.[14]

Additionally, on information and belief, the Court recognized the harshness of his sentence in light of his acceptance of responsibility, nature and circumstances of the case, and history and characteristics of Sean. By imposing a 235-month sentence, the Court showed Mr. Donnelly the severity of his actions. Mr. Donnelly had never been involved in any incidents with law enforcement prior to the present offense and the Court still gave him a severe punishment so that he would never undervalue the seriousness of his offenses. Thus, it is not lost upon him that he should spend significant time in incarceration for his crimes, but the Court has the option now of

---

after-virus-is-gone. (last accessed May 13, 2020). Recent studies of those who have "recovered" from COVID-19 show that beating the initial sickness may be just the first of many battles for those who have survived. Some recovered patients report breathlessness, fatigue and body pain months after first becoming infected. Small-scale studies conducted in Hong Kong and Wuhan, China show that survivors grapple with poorer functioning in their lungs, heart and liver.

[13] Dkt. # 73, p. 13-16.
[14] *See* Dkt. # 68 at 2.

ordering him to confinement in his home—not the dangerous bureau of prisons. Additionally, the twenty-year period of supervised release that is to follow should alleviate the Government's fear that Mr. Donnelly would be "catching a break" from his sentence. He would continue to be monitored by the U.S. Probation Office and the conditions of his supervised release would further diminish his ability to move freely. Therefore, it is highly unlikely that Mr. Donnelly would feel "emboldened and return to his illicit desires," as the Government postures.[15] Mr. Donnelly has already spent most of his 20's in prison because of the offense he committed. Sean also expressed regret, remorse, and acceptance of responsibility for his actions. In all, this sentence has cost him much more than just the five years he has spent in prison.

Further, as the Government agrees, Mr. Donnelly must take advantage of the treatment opportunities available to him in order for him to improve. However, the Government believes this is only possible if Sean serves his full sentence. *Id*. at 16. However, should Sean contract COVID-19 and die as a result, neither would the Government's desire for Sean to serve the totality of his sentence, or Sean and his parent's desire for him to improve as a person be satisfied. As mentioned above, his untimely death because of COVID-19 would not satisfy anyone in this case. Additionally, this Court could require Mr. Donnelly to continue to seek treatment while on home confinement and supervised release in order to ensure that Sean continues to focus on his growth. The criminal justice system has much power and ability in both punishing and rehabilitating offenders; but incarceration is not the only way of accomplishing those goals.

Based on the foregoing, Sean has demonstrated that extraordinary and compelling reasons exist for his release from within the confines of the BOP and that he should serve the remainder

---

[15] Dkt. #73, p. 14.

of his sentence on home confinement. A reduction in sentence would not diminish the seriousness of his offenses. Sean is susceptible to severe life-threatening complications should he contract the COVID-19 virus. Allowing him to serve his sentence in a safer place than FCI Elkton, while also being monitored by a United States Probation officer will result, at this time, in a sufficient and not greater than necessary sentence. It is also a just sentence in light of the pandemic the world is currently experiencing.

Respectfully submitted,

BRATTAIN MINNIX GARCIA

By: Mario Garcia
Mario Garcia, #21638-49
Attorney for Defendant
One Indiana Square, Suite 2625
Indianapolis, IN 46204
(317) 231-1750
mario@bmgindy.com

CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of July 2020, a copy of the foregoing was filed electronically. Notice of this filing will be made available by operation of the Court's CM/ECF system.

/s/ Mario Garcia
Mario Garcia

8